UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BANKERS INSURANCE COMPANY, et al.,**

    **Plaintiffs,**

v.                                      Case No.: 8:10-CV-0419-T-27EAJ

**DLJ MORTGAGE CAPITAL, INC., et al.,**

    **Defendants.**

                                  /

## REPORT AND RECOMMENDATION

Before the court are Defendants' **Motion to Dismiss the Second Corrected Amended Complaint** (Dkt. 16) and Plaintiffs' **Response in Opposition** (Dkt. 22).[1] As stated subsequently, the motion should be granted.

## Plaintiffs' Allegations

Defendant DLJ Mortgage Capital, Inc. ("DLJ") purchased certain mortgages which were serviced by Defendant Select Portfolio Servicing, Inc. ("SPS") (Dkt. 15 ¶¶ 7, 8). DLJ later sold the mortgages to Credit Suisse First Boston Mortgage Securities Corp. ("CSFB Mortgage") (Id. at ¶ 12). In 2002, Credit Suisse First Boston Corp. ("CSFB") issued a series of "Mortgage-Backed Pass-Through Certificates" ("the Certificates") collateralized by the mortgages (Id.).

To market the Certificates, CSFB published a Prospectus and Prospectus Supplements (Id. at ¶ 13). The Prospectus Supplements provided that if the certificateholders' interests in a mortgage loan were adversely affected by a breach of any representation of warranty relating to the loan, DLJ would: 1) cure the breach; 2) repurchase the loan; or 3) substitute a replacement loan within two

---

[1] The District Judge referred the motion to the undersigned for the issuance of a report and recommendation (Dkt. 20).

years of the closing date (Id. at ¶ 16). They also provided for credit support via over-collateralization and the proper filing and pursuit of insurance claims in the event of defaulted mortgage loans (Id.).

CSFB Mortgage further marketed the Certificates by: 1) creating trusts, administered by Bank One, National Association ("Bank One"), to hold the Certificates for the benefit of their holders; 2) obtaining mortgage guaranty insurance from Triad Guaranty Insurance Corporation ("Triad") for the benefit of the trusts; and 3) entering into Pooling and Servicing Agreements (collectively "the PSAs") with DLJ, SPS, and Bank One (Id. at ¶ 15).[2] In the PSAs, DLJ warranted that: 1) the mortgage loans were not delinquent or in default; 2) neither the seller nor the mortgager had committed fraud, error, omission, misrepresentation, or negligence; and 3) it would, upon discovering any breach materially and adversely affecting the certificateholders' interests, cure the breach or supply a substitute mortgage loan (Id. at ¶ 17). DLJ knew or should have known that some of these warranties were false (Id. at ¶ 18).

In 2004, Plaintiffs purchased tranches[3] of the Certificates (Id. at ¶ 11). At the time, neither DLJ, SPS, nor Bank One had notified Moody's or Standard & Poor's that: 1) there were numerous loan delinquencies and defaults in the pool; 2) SPS had not enforced its rights under the PSAs against DLJ to prevent the impairment of the collateral and its diminution in value; 3) Triad had

---

[2] Copies of the PSAs are attached to the complaint (Dkt. 15 Ex. G, H, I). Regarding the issues addressed in this report and recommendation, the PSAs are practically identical. Section 12.03 of the PSAs provides that they are governed by New York substantive law. The parties have not suggested that the law of any other jurisdiction is relevant to the issues presented in the motion to dismiss.

[3] A tranche is "[a] bond issue derived from a pooling of similar debt obligations" which "usually differs from other issues by maturity date or rate of return." Black's Law Dictionary 1535 (8th ed. 2004).

declined to cover many of the mortgages in the pool due in part to their procurement through fraud; and 4) Neither Bank One nor SPS had sought to enforce their rights against Triad for denying insurance coverage (Id. at ¶ 29). Plaintiffs would not have purchased the Certificates had this information been disclosed because Moody's and/or Standard & Poor's would have downgraded them (Id.).

In 2006, Defendant The Bank of New York Mellon ("BNYM") became the trustee and trust administrator for the trusts pursuant to a merger and subsequent acquisition (Id. at ¶¶ 20, 21).

## Analysis

Plaintiffs, as intended third-party beneficiaries of the PSAs, claim that DLJ, SPS, and BNYM each breached the PSAs. Plaintiffs further claim that BNYM breached its fiduciary duty as trustee and trust administrator of the trusts. Defendants argue that Plaintiffs claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff. Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999) (citation omitted). To survive a motion to dismiss a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Dismissal of a complaint is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

I. **The "No-Action" Clause Bars Plaintiffs' Claims Against DLJ and SPS**

Section 12.07 of the PSAs provides that a certificateholder may not bring suit under the

3

PSAs unless:

1) the certificateholder provided written notice of an "Event of Default," and the continuance thereof, to the trust administrator;

2) certificateholders holding at least twenty-five percent of the voting rights evidenced by the Certificates requested, in writing, that the trust administrator institute suit in its own name;

3) the certificateholders offered the trust administrator "reasonable indemnity" against the costs, expenses, and liabilities of suit; and

4) the trust administrator did not institute suit within sixty days of receiving notice.

(Dkt. 15 Ex. 9 at 11).

"No-action" clauses, such as Section 12.07, "typically bar bondholders from instituting any judicial proceedings against the obligor unless the indenture trustee refuses to act after being instructed by the requisite number of bondholders specified in the trust indenture, or, if the indenture trustee acts in bad faith, or, has an adverse interest conflicting with its responsibilities under the trust indenture." Murray v. U.S. Bank Trust Nat'l Ass'n, 365 F.3d 1284, 1289 n.9 (11th Cir. 2004). Such clauses are generally upheld "in order to avoid a multiplicity of lawsuits and to ensure that any litigation will inure for the equal and ratable benefit of all bondholders." Id.

Defendants contend that Plaintiffs' breach-of-contract claims are barred by Section 12.07 because, among other things, Plaintiffs do not allege that at least twenty-five percent of the certificateholders requested, in writing, that the trust administrator institute suit in its own name. Plaintiffs respond that any non-compliance with Section 12.07 should be excused because compliance would have been futile. Plaintiff emphasizes its allegations that:

> Providing written notice to BNYM to perform its obligations under the PSAs, including BNYM making demand on DLJ or SPS to perform their obligations under the PSAs, would be futile given that BNYM was involved in the conduct underlying

4

Plaintiff's claims (Dkt. 15 ¶ 35).

All conditions precedent to the institution of this action have occurred, have been excused, are futile or impossible, are satisfied, or have been otherwise waived (Id. at ¶ 36).

[I]n light of BNYM's prior and consistent refusals to respond to any of [Plaintiffs'] requests for data, coupled with the fact that BNYM would be required to address its own deficiencies, any demand by [Plaintiffs] would be futile (Id. at ¶ 100).

Similar arguments and responses were raised on similar facts and circumstances in Sterling Federal Bank, F.S.B. v. Credit Suisse First Boston Corp. ("Sterling I"), No. 07-C-2922, 2008 WL 4924926, at *10-11 (N.D. Ill. Nov. 14, 2008), and Sterling Federal Bank, F.S.B. v. DLJ Mortgage Capital, Inc. ("Sterling II"), No. 09-C-6904, 2010 WL 3324705, at *3-5 (N.D. Ill. Aug. 20, 2010).[4] In each case, a purchaser of mortgage-backed pass-through certificates brought suit against Defendants and others for breach of a pooling and servicing agreement. 2010 WL 3324705, at *1-2; 2008 WL 4924926, at *1-2. Each such agreement prohibited suits by certificateholders unless certificateholders holding twenty-five percent of the voting rights for the certificates provided notice of an event of default to the trustee.[5] 2010 WL 3324705, at *3; 2008 WL 4924926, at *11. The plaintiff argued that compliance with the no-action clause should be excused because compliance would have been futile. 2010 WL 3324705, at *4; 2008 WL 4924926, at *10-11.

Emphasizing the plaintiff's allegation that BNYM failed to respond to multiple requests for information regarding other certificateholders, the Sterling I court concluded that any demand on

---

[4] Although Sterling II was decided after the motion and response were filed, the court finds it particularly instructive.

[5] Section 12.07 of the agreement at issue in Sterling II included language identical to that found in Section 12.07 of the PSAs. Indeed, the agreements as a whole may be identical given that some of the certificates at issue in Sterling II were issued from the same series (2002-22) as some of the Certificates at issue here. See 2010 WL 3324705, at *1 n.1; (Dkt. 15 ¶ 12).

BNYM would have been futile and declined to dismiss claims against any of the defendants regardless of the plaintiff's compliance with the no-action clause. 2008 WL 4924926, at *11. The Sterling II court agreed that the claims against BNYM should not be dismissed because compliance with the no-action clause would have amounted to asking BNYM to sue itself. 2010 WL 3324705, at *4. However, the Sterling II court dismissed the claims against DLJ and SPS, finding that futility as to BNYM did not excuse compliance with the no-action clause as to these defendants. Id. at *5. After reviewing New York law, the court found "an important difference between asking the trustee to sue itself - an 'absurd' requirement that we presume the parties did not intend - and asking it to sue a third party, even when the investor alleges wrongdoing by the trustee." Id. The court also noted that the purpose of no-action clauses is "to protect bondholders from footing the bill for lawsuits not in their collective economic interest." Id. at *5 n.4.

Here, Plaintiffs do not allege that they attempted to comply with Section 12.07. Nor do Plaintiffs contend that they hold twenty-five percent or more of the voting rights evidenced by the Certificates or dispute Defendants' assertion to the contrary (Dkt. 16 at 10). The remaining certificateholders should not be deprived of Section 12.07's protections simply because Plaintiffs allege that BNYM participated in the conduct at issue and/or refused to respond to vaguely-described "requests for data" (Dkt. 15 ¶ 100). Consequently, Counts I, II, III, and IV of Plaintiffs' Second Corrected Amended Complaint should be dismissed without prejudice.

## II. **Plaintiffs' Claims Against BNYM are Derivative**

Defendants also contend that Plaintiffs claims should be dismissed because they are derivative in nature, all of the claims stem from management of the mortgage pool underlying the Certificates, and any mismanagement concerns are common to all certificateholders because they

are all paid from funds generated by a single mortgage pool. Plaintiffs respond that, as insurers, their damages are distinct because the declining value of the Certificates results in a reduction in capital which in turn jeopardizes their A.M. Best insurance company ratings.[6] Plaintiffs contend that they must either reduce the number of policies they write or buy down their retention risk with reinsurance to prevent a rating downgrade.

Plaintiffs' claims against BNYM implicate duties owed to all certificateholders. See Sterling II, 2010 WL 3324705, at *6. Their injuries stem from their ownership interests in trusts harmed by BNYM's alleged breaches. See id. As Plaintiffs' claims against BNYM are derivative, they are governed by Fed R. Civ. P. 23.1. See id. (finding claims derivative despite bank's assertion of distinct harm from banking regulations that made it onerous to carry below investment-grade securities); see also Sterling I, 2008 WL 4924926, at *10 (discussing applicability of Rule 23.1 demand requirement).

Defendants contend that Plaintiffs have failed to satisfy Rule 23.1 in at least two ways. First, Defendants submit that Plaintiffs are seeking to enforce their own interests without regard for interests of the other certificateholders. See Fed. R. Civ. P. 23.1(a) (requiring plaintiff to fairly and adequately represent those similarly situated in enforcing derivative rights). Moreover, Defendants point out that Plaintiffs' complaint is not verified. See Fed. R. Civ. P. 23.1(b).

Plaintiffs' complaint is not verified. Moreover, Plaintiffs do not allege or otherwise suggest that they will fairly and adequately represent the interests of other similarly situated

---

[6] Plaintiffs also argue that their claims are individualized and direct because they are the sole owner of one class of securities (2022-22) and "[o]ther classes may have their own unique damages" (Dkt. 22 at 11). Like the similar circular argument raised by the plaintiff in Sterling II, Plaintiffs' argument is "undeveloped and unsupported by any pertinent authorities." 2010 WL 3324705, at *5 n.5.

7

certificateholders. Accordingly, Plaintiffs' claims against BNYM should be dismissed without prejudice as violative of Rule 23.1.

Nevertheless, because these defects may be curable if an amended complaint is permitted, it is appropriate to address the other challenges to the claims against BNYM in the interest of judicial economy and to eliminate or minimize future motion practice.

### III. Other Challenges to the Claims Against BNYM

#### a. Breach of Section 12.05 of the PSAs (Count V)

In Count V, Plaintiffs allege that BNYM, as trust administrator, breached Section 12.05 of the PSAs by failing to disclose to ratings agencies, in writing, that: 1) a mortgage loan was substituted; 2) a payment or draw occurred on an insurance policy applicable to mortgage loans; 3) a final payment was made on an amount owing to a "Class of Certificates;" 4) there was an "Event of Default" under the PSAs; and/or 5) a mortgage loan was repurchased in accordance with the PSAs (Dkt. 15 ¶¶ 73-74).

Defendants assert that Plaintiffs have failed to allege sufficient facts showing that the ratings agencies were not provided with required notice. Plaintiffs do not allege that a mortgage loan was substituted; that a payment or draw occurred on an insurance policy applicable to mortgage loans; that a final payment was made on an amount owing to a "Class of Certificates;" that there was an "Event of Default" under the PSAs; or that a mortgage loan was repurchased in accordance with the PSAs. Plaintiffs' allegation that BNYM breached Section 12.05 by failing to provide notice that one of these events occurred "do[es] not permit the court to infer more than the mere possibility of misconduct." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Thus, Count V should be dismissed without prejudice. See Sterling I, 2008 WL 4924926, at *14 (dismissing similar claim where

plaintiff failed to allege that one of the five events occurred); but see Sterling II, 2010 3324705, at *6 (finding mere allegation that BNYM breached Section 12.05 was "not implausible" and provided sufficient notice of the claim).

      **b.**      **Breach of Section 4.04 of the PSAs (Count VI)**

In Count VI, Plaintiffs allege that BNYM, as trust administrator, breached Section 4.04 of the PSAs by failing to provide Plaintiffs with full and accurate information, despite repeated requests, regarding claims submitted under the Triad insurance policy (Dkt. 15 ¶¶ 78-79).

Section 4.04 provides that the trust administrator must prepare monthly statements and make them available to certificateholders (Dkt. 15 Ex. 8 at 28). The trust administrator's responsibility for disbursing the statements "is limited to the availability, timeliness and accuracy of the information derived from the [loan servicers]" (Id. at 29). Section 10.01 of the PSAs provides that the trust administrator "shall have no duty to recompute, recalculate or verify the accuracy" of materials furnished to it but shall notify the certificateholders of any such material that "is found not to conform in any material respect to the requirements of [the PSAs]" (Id. at 58).

Reasoning that the text of Section 4.04 requires BNYM to do no more than relay information it received from loan servicers, Defendants argue that Plaintiffs have failed to sufficiently allege a breach of Section 4.04. Defendants further maintain that Section 10.01 of the PSAs relieved BNYM of any obligation to investigate missing information. Plaintiffs respond that BNYM had an implicit duty to verify that information it received from loan servicers was complete.

Whether Section 4.04 obligated BNYM to verify the completeness of information it received from loan servicers cannot be resolved on a motion to dismiss. It would be similarly inappropriate to determine whether Section 10.01's limitations on BNYM's duty to recalculate, recompute, or

9

verify the accuracy of the statements absolved BNYM of a duty to verify their completeness. Plaintiffs have sufficiently stated a plausible claim for breach of Section 4.04. See Sterling II, 2010 WL 3324705, at *6; Sterling I, 2008 WL 4924926, at *14.

### c. **Breach of Section 9.01 of the PSAs (Count VII)**

In Count VII, Plaintiffs allege that BNYM, as trustee, breached Section 9.01 of the PSAs by failing to examine statements provided to it by the trust administrator to determine whether they conformed to the requirements of Section 4.04 (Dkt. 15 ¶¶ 84-85).

Section 9.01 provides that "[t]he Trustee, upon receipt of all ... statements ... furnished to the Trustee that are specifically required to be furnished pursuant to any provision of [the PSAs] shall examine them to determine whether they conform to the requirements of [the PSAs]" (Dkt. 15 Ex. 8 at 50).

Defendants submit that Plaintiffs failed to sufficiently allege a breach of Section 9.01 because the complaint does not indicate how BNYM failed to comply with Section 9.01 or how the statements at issue did not conform with Section 4.04. Whether or not Plaintiffs alleged that the statements did not conform with Section 4.04, Plaintiffs' allegation that BNYM failed to examine the statements sets forth a plausible claim that BNYM breached Section 9.01.

### d. **Breach of Fiduciary Duty (Count VIII)**

In Count VIII, Plaintiffs allege that BNYM breached its fiduciary duty to Plaintiffs by not asking SPS to provide necessary data regarding Triad claims and not insisting that SPS and Triad process appropriate mortgage insurance claims (Dkt. 15 ¶ 93).

Defendants submit that Plaintiffs have failed to plead the existence of a fiduciary duty because BNYM owed no such duty to certificateholders and further argue that Count VIII merely

10

repackages allegations set forth in Counts V-VII. Plaintiffs respond that, based on their allegations, BNYM had extra-contractual fiduciary duties and that Count VIII is pleaded in the alternative to their breach-of-contract claims.

Although an indenture trustee generally does not owe a fiduciary duty to certificateholders, New York law assigns two extra-contractual, pre-default duties: 1) avoid conflicts of interest; and 2) perform all basic, non-discretionary, ministerial tasks with due care. Sterling II, 2010 WL 3324705, at *7 (citations omitted); Sterling I, 2008 WL 4924926, at *15 (citations omitted). Plaintiffs allege that BNYM failed to obtain complete information from SPS and relay that information to Plaintiffs (Dkt. 15 ¶¶ 92-95). As noted above, whether BNYM had a duty under the PSAs to verify the completeness of information it received from loan servicers such as SPS cannot be resolved on a motion to dismiss. Liberally construed, Count VIII sufficiently pleads that BNYM breached a fiduciary duty. See Sterling II, 2010 WL 3324705, at *8.[7]

## IV. Damages

Defendants maintain that Plaintiffs have failed to plead facts demonstrating entitlement to compensatory damages because Plaintiffs fail to allege nonpayment of any amounts owed under the Certificates. Plaintiffs respond that they have alleged damages insofar as Defendants' actions have caused a drastic reduction of the Certificates' credit ratings, thereby damaging Plaintiffs' capital requirements. Although Plaintiffs allege in the complaint that the Certificates were drastically downgraded (Dkt. 15 ¶ 15 n.5), they do not allege that their capital requirements were affected. Because Plaintiff's damages are speculative as alleged, Counts V, VI, VII, and VIII should be

---

[7] As the Sterling II court noted, whether any duty to obtain complete information from loan servicers was non-discretionary is "beyond the scope of a motion to dismiss." 2010 WL 3324705, at *8 n.7.

dismissed without prejudice. See Sterling II, 2010 WL 3324705, at *8 (dismissing claims against BNYM where plaintiff did not mention or even allude to illiquidity or increased capital reserve requirements in the complaint).

**Conclusion**

Plaintiffs' claims against DLJ and SPS (Counts I-IV) should be dismissed without prejudice because Plaintiffs do not allege compliance with Section 12.07 of the PSAs. Plaintiffs' claims against BNYM (Counts V-VIII) should also be dismissed without prejudice.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) Defendants' Motion to Dismiss the Second Corrected Amended Complaint (Dkt. 16) be **GRANTED**.

**Date: October 8, 2010**

*[signature]*
ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge