UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BANKERS INSURANCE COMPANY, et al.,**

    **Plaintiffs,**

v.                                              Case No.: 8:10-CV-0419-T-27EAJ

**DLJ MORTGAGE CAPITAL, INC., et al.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Before the court is Defendant The Bank of New York Mellon's **Motion to Dismiss the Amended Verified Certificateholder Derivative Complaint** (Dkt. 39) and Plaintiffs' **Response** (Dkt. 42).[1] As stated subsequently, the motion should be granted in part and denied in part.

## Procedural Background

In May 2010, Plaintiffs filed amended claims against Defendants DLJ Mortgage Capital, Inc. ("DLJ"), Select Portfolio Servicing, Inc. ("SLS"), and The Bank of New York Mellon ("BNYM") (Dkt. 15). Adopting my report and recommendation, the District Judge dismissed those claims (Dkt. 28, 34). Plaintiffs subsequently filed a four-count verified derivative complaint (Dkt. 36), invoking this court's diversity jurisdiction and bringing claims against BNYM for breach of contract and breach of fiduciary duty.[2] This is the third complaint filed by Plaintiffs in this action.[3]

---

[1] The District Judge referred the motion to the undersigned for the issuance of a report and recommendation (Dkt. 41).

[2] Although the complaint names DLJ and SLS as Defendants, BNYM is the only Defendant named in the four counts. The District Judge gave Plaintiffs 150 days from November 22, 2010 to amend their claims against SPS and DLJ (Dkt. 34 at 1).

[3] Plaintiffs' first amended complaint was "corrected" twice (Dkt. 11-12, 15).

**Plaintiffs' Allegations**

DLJ purchased residential real estate mortgages which it later sold to Credit Suisse First Boston Mortgage Securities Corp. ("CSFB Mortgage") (Id. ¶ 11). In 2002, CSFB Mortgage issued a series of certificates ("the Certificates") collateralized by the mortgages (Id.).

CSFB Mortgage marketed the Certificates by: 1) creating trusts to hold the Certificates for the benefit of the certificateholders, with Bank One as the Trustee and JP Morgan as the Trust Administrator; 2) obtaining mortgage guaranty insurance from Triad Guaranty Insurance Corporation ("Triad") for the benefit of the trusts; and 3) entering into pooling and servicing agreements (collectively "the PSAs") with DLJ, Bank One, and JP Morgan (Id. ¶ 14).[4] In the PSAs, DLJ warranted that: 1) the mortgage loans were not delinquent or in default; 2) neither the seller nor the mortgager had committed fraud, error, omission, misrepresentation, or negligence; and 3) it would, upon discovering any breach materially and adversely affecting the certificateholders' interests, cure the breach or supply a substitute mortgage loan (Id. ¶ 22).

In 2004, Plaintiffs purchased tranches[5] of the Certificates (Id. ¶ 10). In 2006, pursuant to a merger and subsequent acquisition, BNYM became the Trustee and Trust Administrator for the trusts (Id. ¶¶ 15, 16). BNYM subsequently failed to notify Moody's or Standard & Poor's that: 1) there were numerous loan delinquencies and defaults in the pool; 2) SPS had not enforced its rights

---

[4] Copies of the PSAs are attached to the complaint (Dkt. 36 Ex. 6-11). For purposes of this report and recommendation, the PSAs are practically identical. Section 12.03 of the PSAs ("Governing Law") provides that the agreement shall be governed by New York substantive law. The parties have not suggested that the law of any other jurisdiction is relevant to the issues presented in the motion to dismiss.

[5] A tranche is "[a] bond issue derived from a pooling of similar debt obligations" which "usually differs from other issues by maturity date or rate of return." Black's Law Dictionary 1535 (8th ed. 2004).

under the PSAs against DLJ to prevent the impairment of the collateral and its diminution in value; 3) Triad had declined to cover many of the mortgages in the pool due in part to their procurement through fraud; and 4) neither BNYM nor SPS had sought to enforce its rights against Triad for denying insurance coverage (Id. ¶ 44). Had BNYM satisfied this duty, the Certificates would have been downgraded and the certificateholders would have sold their Certificates before their value further decreased (Id. ¶ 49). Moreover, BNYM failed to provide complete and accurate monthly statements to the certificateholders, as required by the PSAs, impeding the collection of principal and interest payments due on the mortgages (Id. ¶¶ 27, 41, 54-55).

## Analysis

Plaintiffs claim that BNYM breached the PSAs and breached its fiduciary duty as Trustee and Trust Administrator. BNYM argues that Plaintiffs' claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff. Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999) (citation omitted). To survive a motion to dismiss a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Dismissal of a complaint is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

**I.** **The "No-Action" Clause Does Not Bar Plaintiffs' Claims Against BNYM**

BNYM contends that Plaintiffs' claims should be dismissed for failure to comply with Section 12.07 of the PSAs, which provides that a certificateholder may not bring suit under the PSAs

unless:

1) the certificateholder provided written notice of an "Event of Default," and the continuance thereof, to the trust administrator;

2) certificateholders holding at least twenty-five percent of the voting rights evidenced by the Certificates requested, in writing, that the trust administrator institute suit in its own name;

3) the certificateholders offered the trust administrator "reasonable indemnity" against the costs, expenses, and liabilities of suit; and

4) the trust administrator did not institute suit within sixty days of receiving notice.

(Dkt. 36 Ex. 8 § 12.07).

"'[N]o-action' clauses," such as Section 12.07, "typically bar bondholders from instituting any judicial proceedings against the obligor unless the indenture trustee refuses to act after being instructed by the requisite number of bondholders specified in the trust indenture, or, if the indenture trustee acts in bad faith, or, has an adverse interest conflicting with its responsibilities under the trust indenture." Murray v. U.S. Bank Trust Nat'l Ass'n, 365 F.3d 1284, 1289 n.9 (11th Cir. 2004) (citations omitted). Such clauses are generally upheld "in order to avoid a multiplicity of lawsuits and to ensure that any litigation will inure for the equal and ratable benefit of all bondholders." Id. (citation omitted).

BNYM concedes that Plaintiffs should be excused from demanding that BNYM institute an action against itself, but maintains that Plaintiffs should nonetheless be required to satisfy Section 12.07's remaining prerequisites for a suit under the PSAs (Dkt. 39 at 3).[6]

---

[6] The parties dispute whether the court resolved this issue when it dismissed the prior complaint. In my report and recommendation, I found that Section 12.07 barred Plaintiffs' claims against DLJ and SPS (Dkt. 28 at 3-6). In recommending dismissal of Plaintiffs' claims against BNYM for failure to comply with Fed. R. Civ. P. 23.1 (Id. at 6-8), I did not determine whether

The parties dispute whether this issue was resolved in <u>Sterling Federal Bank, F.S.B. v. DLJ Mortgage Capital, Inc.</u>, No. 09 C 6904, 2010 WL 3324705 (N.D. Ill. Aug. 20, 2010). There, a purchaser of certificates from the same series (2002-22) as some of the Certificates at issue in this matter brought suit against BNYM and others for beach of a pooling and servicing agreement that included a no-action clause identical to Section 12.07 of the PSAs. <u>Id.</u> at *1-3 & n.1.

BNYM conceded that the plaintiff was excused from demanding that BNYM sue itself, but maintained it was not excused from complying with the no-action clause's other requirements. <u>Id.</u> at *4. Noting BNYM's failure to cite authorities "that support parsing the no-actions clause's requirements in this fashion," the court observed that BNYM relied upon authorities impliedly rejecting that approach. <u>Id.</u> (citing <u>Peak Partners, LP v. Republic Bank</u>, 191 F. App'x 118, 126 n.11 (3d Cir. 2006) (unpublished); <u>Cruden v. Bank of N.Y.</u>, 957 F.2d 961, 968 (2d Cir. 1992)). Therefore, the court excused compliance with the no-action clause as to the plaintiff's claims against BNYM. <u>Id.</u>

BNYM argues that the <u>Sterling</u> court "merely noted that [BNYM's] briefing did not provide authorities supporting the enforcement of certain provisions of a contract when one provision is deemed invalid" (Dkt. 39 at 4). BNYM further maintains that <u>Cruden</u> and <u>Peak Partners</u> "offer no substantive guidance" because they did not address the enforcement of provisions other than the demand requirement (Dkt. 39 at 4 n.5).

Like Section 12.07, the no-action clause at issue in <u>Cruden</u> barred suit by a debenture holder unless the holder provided written notice of default to the trustee, and holders of at least 25% of the aggregate principal amount of the debenture asked the trustee to institute suit and agreed to

---

Section 12.07 barred Plaintiffs' claims against BNYM.

5

indemnify the trustee for costs. 957 F.2d at 967-68. The Second Circuit agreed with the district court that the no-action clause did not apply to suits against the trustees "as it would be absurd to ask [a trustee] to sue itself." Id. at 968. Relying on Cruden, the Third Circuit reached the same conclusion in Peak Partners, finding the plaintiff was "not required to comply with the no-action clause with regard to its suit against [the trustee] because it would have required [the trustee], in effect, to sue itself." 191 F. App'x at 126 n.11 (citation and internal quotation marks omitted).

In addition to emphasizing the absurdity of asking a trustee to sue itself, both the Cruden and Peak Partners courts clearly excused the remaining pre-suit requirements in the no-action clauses at issue. Although neither court explicitly held that waiver of a demand requirement excuses compliance with the remaining provisions of a no-action clause, the undersigned agrees with the Sterling court that they impliedly did so. Thus, any alleged failure to comply with the no-action clause is not fatal to Plaintiffs' claims.

BNYM next submits that the demand requirement should be severed from Section 12.07 pursuant to Section 12.06, which provides that invalid terms of the PSAs are severable from, and in no way affect the validity or enforceability of, the remaining terms (Dkt. 36 Ex. 8 § 12.06). Neither Cruden, Peak Partners, nor Sterling addressed the impact of a severability provision on a no-action clause's demand requirement where suit is brought against a trustee. However, the purpose behind Section 12.07 confirms that it is wholly inapplicable to Plaintiffs' claims against BNYM.

First, Section 12.07 is clearly designed to afford the trustee, not the certificateholders, an opportunity to assess whether or not to bring suit. Second, the requirement that certificateholders holding at least 25% of the voting rights in the Certificates offer the trustee "reasonable indemnity ... against the costs, expenses, and liabilities to be incurred" is inconsistent with a suit by

6

certificateholders against the trustee. Third, although Section 12.07 requires that certificateholders holding at least 25% of the voting rights in the Certificates make a written request for the trustee to bring suit, it does not preclude suit by a certificateholder holding less than 25% of the voting rights in the Certificates should the trustee decline to bring suit. Finally, providing the trustee written notice of an Event of Default on its own part as a prerequisite for suit would not promote Section 12.07's express purpose to prevent a minority of certificateholders from disturbing or prejudicing the rights of other certificateholders. Because Section 12.07 is inapplicable to Plaintiffs' claims against BNYM, the severability of the demand requirement is a non-issue. Consequently, Plaintiffs' claims are not barred by any failure to satisfy Section 12.07's requirements.

## II. Count III Does Not State a Claim for Breach of Contract

In Count III, Plaintiffs claim that BNYM, as Trustee, breached Section 9.01 of the PSAs by failing to examine information that it received from the Trust Administrator pursuant to Section 4.04 (Dkt. 36 ¶ 91).[7] However, Plaintiffs also allege that BNYM was both the Trustee and the Trust Administrator and that the duties of these roles "effectively merged by virtue of a single corporate entity being responsible for serving in both important roles" (Id. ¶ 17). Emphasizing this allegation, BNYM argues that Plaintiffs have failed to state a plausible claim that BNYM breached Section 9.01 by failing to review information it "received" from itself.

Plaintiffs respond that the allegation "was simply to demonstrate that [BNYM] is the same

---

[7] Section 9.01 provides that "[t]he Trustee, upon receipt of all resolutions, certificates, statements, opinions, reports, documents, orders or other instruments furnished to the Trustee that are specifically required to be furnished pursuant to any provision of this Agreement shall examine them to determine whether they conform to the requirements of this Agreement" (Dkt. 36 Ex. 7 § 9.01). Section 4.04 requires the Trust Administrator to prepare monthly statements with specific information and provide them to the Trustee (Id. § 4.04).

7

entity performing all the functions of the Trustee and Trust Administrator and that it would be futile for [Plaintiffs] to make a demand on BNYM to sue BNYM in either of its capacities" (Dkt. 42 at 8-9). Plaintiffs maintain there is a factual issue as to whether BNYM has separate departments corresponding to each role, which were required to exchange information under Section 9.01.

As neither party supports its argument with citation to pertinent legal authority,[8] and given Plaintiffs' allegation that BNYM's duties under both roles "effectively merged by virtue of a single corporate entity being responsible for serving in both important roles" (Dkt. 36 ¶ 17), the court agrees with BNYM that the complaint, on its face, does not state a plausible claim that BNYM failed to examine information that it "received" from itself. Thus, Count III should be dismissed for failure to state a claim.

### III. Count IV States a Claim Under New York Common Law

In Count IV, Plaintiffs allege that BNYM had a duty to provide the certificateholders with monthly statements incorporating information enumerated in Exhibit U to the PSAs. This information includes "the number and principal amount of claims submitted under the Mortgage Guaranty Insurance Policy, as applicable" (Dkt. 36 Ex. 8 Ex. U). Plaintiffs maintain that BNYM failed to seek information from SPS regarding the number and status of Triad insurance claims (Dkt. 36 ¶¶ 101-03).

Although Plaintiffs style their claim as a breach of a "fiduciary" duty, Plaintiffs concede that Count IV is based on BNYM's duty to perform basic, non-discretionary, ministerial tasks, as required by New York common law (Dkt. 42 at 10). See Peak Partners, 191 F. App'x at 122. That

---

[8] BNYM cites authority for the general proposition that a claim must be plausible. Plaintiffs cite no legal authority whatsoever.

duty, however, is not a "fiduciary" duty. See AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co., 866 N.Y.S.2d 578, 584 (N.Y. 2008).

BNYM submits that Count IV should be dismissed "to the extent [it] is styled as a breach of a fiduciary duty" (Dkt. 39 at 8-9). Plaintiffs ask the court to "disregard the label and focus on the substance of the claim" (Dkt. 42 at 10). So long as Count IV states a claim under New York common law, it should not be dismissed for failure to state a claim for breach of a fiduciary duty. See Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364, 1369 (11th Cir. 1997) ("A complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on any possible theory.") (citation omitted).

BNYM further argues that, even if treated as a claim for failure to perform basic, non-discretionary, ministerial tasks, Count IV should be dismissed because any duty to perform such tasks is circumscribed by the PSAs. See Peak Partners, 191 F. App'x at 125 (recognizing that the duty to perform basic administrative obligations under New York law "can be limited by the provisions of the Indenture"). BNYM relies on Section 10.02(a)(v), which relieves the Trust Administrator from investigating facts or matters unless requested to do so by certificateholders holding more than 50% of the voting rights in the Certificates (Dkt. 36 Ex. 7 § 10.02(a)(v)). As Plaintiffs point out, Section 10.02(a)(v) does not relieve the Trustee of any duties, and applies to the Trust Administrator "[e]xcept as otherwise provided in Section 10.01" (Id. § 10.02(a)). Section 10.01, in turn, requires the Trust Administrator to examine all documents furnished to it pursuant to the PSAs and determine whether they conform to the requirements of the PSAs (Id. § 10.01). Whether BNYM's duty, as Trust Administrator, to perform basic, non-discretionary, ministerial

tasks required it to seek information from SPS regarding the number and status of Triad insurance claims, and whether any such requirement is governed by Section 10.01 or Section 10.02(a)(v), is beyond the scope of a motion to dismiss. Moreover, BNYM has not argued that the PSAs circumscribe its common law duties as Trustee. Consequently, Count IV should not be dismissed.

## IV. Plaintiffs Have Sufficiently Pleaded Damages Caused By BNYM's Conduct

Plaintiffs allege that BNYM's failure to provide complete information to ratings agencies prevented earlier downgrades of the Certificates that would have alerted the certificateholders to problems with the mortgages (Dkt. 36 ¶¶ 51, 75, 84). Plaintiffs contend that such downgrades would have prompted them to sell their Certificates before their value further decreased or to make earlier demands on BNYM, thus preserving the trust assets (Id. ¶¶ 49, 76, 84, 93, 109). Plaintiffs further allege that full and timely disclosures to the ratings agencies and the certificateholders would have caused improved collection of principal and interest on the mortgage loans and prevented the principal amounts of various classes of bonds from being "wiped out" (Id. ¶¶ 51, 55, 77-78, 81-82, 85-86, 94-95, 110-11).

BNYM submits that Plaintiffs' alleged damages were caused by "the performance of the loan pool and the supposed actions or inactions of other parties, which has nothing to do with [BNYM's] obligations as Trust Administrator" (Dkt. 39 at 10). Although Plaintiffs' damages ultimately stemmed from problems in the mortgage pool, Plaintiffs plausibly state that BNYM's failure to provide information to ratings agencies and the certificateholders impeded Plaintiffs' ability to mitigate those damages. Therefore, Plaintiffs' complaint should not be dismissed for failure to allege a causal link between BNYM's actions and Plaintiffs' damages.

**Conclusion**

Plaintiffs' claims against BNYM are not barred by the no-action clause in the PSAs. Moreover, Plaintiffs have sufficiently pleaded that they were harmed by BNYM's failure to provide information to ratings agencies and the certificateholders, and that BNYM breached its duty to perform basic, non-discretionary, ministerial tasks, as required by New York common law. However, Count III should be dismissed as Plaintiffs' claim that BNYM breached the PSAs by failing to review information it "received" from itself is not plausible given the allegations in the complaint.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) Defendant The Bank of New York Mellon's Motion to Dismiss the Amended Verified Certificateholder Derivative Complaint (Dkt. 39) be **GRANTED IN PART AND DENIED IN PART**.[9]

**Date: March 17, 2011**

ELIZABETH A JENKINS
United States Magistrate Judge

---

[9] BNYM contends that Plaintiffs' complaint should be dismissed with prejudice "[b]ecause Plaintiffs now have received five opportunities to plead their case properly" (Dkt. 39 at 11). Plaintiffs' response consists of a mere request that any dismissal be without prejudice and with leave to amend (Dkt. 42 at 1, 13). Whether Plaintiffs should be permitted to amend their complaint is an issue better resolved by the District Judge, as the issue has not been fully argued at this time.

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge