UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BANKERS INSURANCE COMPANY**
and **BANKERS LIFE INSURANCE CO.**,

    **Plaintiffs**,

v.                                              Case No.: 8:10-CV-419-T-27EAJ

**DLJ MORTGAGE CAPITAL, INC.**, et al.,

    **Defendants**.
_____/

## REPORT AND RECOMMENDATION

Before the court are Defendant U.S. Bank, N.A.'s ("U.S. Bank") **Motion to Dismiss the Second Amended Derivative Complaint, or in the Alternative, Transfer This Action** (Dkt. 77) and Plaintiffs' **Response** (Dkt. 83).[1] For the reasons explained below, the motion to transfer the case to the United States District Court for the Northern District of Illinois should be granted and ruling deferred on the motion to dismiss.

## Procedural Background

In May 2010, Plaintiffs filed amended claims against DLJ Mortgage Capital, Inc. ("DLJ"), Select Portfolio Servicing, Inc. ("SLS"), and The Bank of New York Mellon ("BNYM") (Dkt. 15). Adopting the undersigned's report and recommendation, the District Judge dismissed those claims (Dkt. 28, 34). Plaintiffs subsequently filed a four-count, derivative amended complaint asserting claims against BNYM for breach of contract and breach of fiduciary duty (Dkt. 36). The District Judge dismissed Count III of the amended complaint pursuant to the undersigned's report and

---

[1] The District Judge referred the motion to the undersigned for a report and recommendation (Dkt. 86).

recommendation (Dkt. 43, 54). Plaintiffs then filed a second amended derivative complaint which is the subject of U.S. Bank's motion to dismiss or transfer the case. Plaintiffs' second amended complaint asserts three counts for breach of contract against BNYM and one count for breach of contract against U.S. Bank.

## Plaintiffs' Allegations

DLJ purchased subprime residential real estate mortgages serviced by SPS (Dkt. 61 ¶ 12). DLJ later sold the mortgages to Credit Suisse First Boston Mortgage Securities Corp. ("CSFB") (id.). In 2002, CSFB issued a series of certificates collateralized by the mortgages (id.). Plaintiffs purchased tranches of the certificates in 2004 (id. ¶ 11).[2]

CSFB marketed the certificates by: (1) entering into pooling and servicing agreements ("PSAs"); (2) creating trusts by way of the PSAs to hold the certificates for the benefit of the certificateholders; (3) obtaining mortgage guaranty insurance policies; and (4) publishing prospectuses regarding the sale of the certificates (id. ¶¶ 13-15).[3] Supplements to the prospectuses state that credit support for the certificates would be provided by over collateralizing the certificates (id. ¶ 19). U.S. Bank became trustee for the trusts in February 2004, and BNYM became the trust administrator in October 2006 (id. ¶¶ 16-17).

In the PSAs, DLJ warranted that: (1) the mortgage loans were not delinquent or in default; (2) neither the seller nor the mortgager had committed fraud, error, omission, misrepresentation, or

---

[2] A tranche is "[a] bond issue derived from a pooling of similar debt obligations" which "usually differs from other issues by maturity date or rate of return." Black's Law Dictionary 1535 (8th ed. 2004).

[3] Copies of the PSAs are attached to the complaint. For purposes of this report and recommendation, the PSAs are practically identical (see Dkt. 61 Ex. 6-11).

negligence; and (3) it would, upon discovering any breach materially and adversely affecting the certificateholders' interests, cure the breach or supply a substitute mortgage loan (id. ¶ 22). SPS had a duty to ensure that DLJ cured, repurchased, or substituted any mortgage as to which a breach occurred (id. ¶ 23). In addition, SPS was obligated to pursue claims for insurance coverage regarding mortgages in the pool as well as provide mortgage information to BNYM (id. ¶¶ 24-25). Based on information from SPS, BNYM was required to provide notice to credit rating agencies of certain events, such as substitution of a mortgage loan, payment by a mortgage guaranty insurance policy, or a default under the PSAs (id. ¶ 26).

Following numerous delinquencies and defaults in the mortgage pool, DLJ failed to cure or repurchase defective mortgage loans as required by the PSAs (id. ¶ 32). Additionally, SPS did not enforce DLJ's obligations to cure the defective mortgage loans or pursue claims for insurance coverage (id. ¶¶ 33-34). Instead, SPS wrongly charged the over-collateralization accounts, which reduced the amount of money available for certificateholders (id. ¶ 34). For its part, BNYM failed to provide certain information to credit rating agencies that would have downgraded the certificates and prompted the certificateholders to sell their certificates before the value decreased any further (id. ¶¶ 44, 49).

Under the PSAs, BNYM was required to provide monthly statements to U.S. Bank regarding various aspects of the certificates and the underlying mortgage loans (id. ¶ 89). U.S. Bank breached the PSAs by failing to examine monthly statements provided by BNYM (id. ¶ 91). To the extent that U.S. Bank examined such statements, and the statements did not conform with the PSAs, U.S. Bank failed to request conforming statements or notify certificateholders that corrected statements were not received (id. ¶ 92).

If U.S. Bank had fulfilled its duty to ensure that complete and accurate information was provided to certificateholders, then certificateholders could have taken steps to preserve trust assets (id. ¶ 94). Also, defective mortgage loans would have been cured sooner, and insurance claims could have been submitted to prevent the wrongful charging of losses to the trust over-collateralization accounts (id. ¶ 95). This would have resulted in timely payment of principal and interest to certificateholders and prevented the principal amounts of various classes of certificates from being wiped out (id. ¶¶ 95-96).

## **Discussion**

Count III of Plaintiffs' second amended complaint alleges that U.S. Bank breached the PSAs. U.S. Bank argues that Plaintiffs' claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, U.S. Bank asks the court to transfer the case to the Northern District of Illinois where a similar action was first filed. The court will first address U.S. Bank's request to transfer the case. If the court decides to transfer the case, then it need not reach U.S. Bank's motion to dismiss for failure to state a claim.

Approximately three months before Plaintiffs filed the present suit, Sterling Federal Bank, F.S.B. ("Sterling F.S.B.") filed an action in the Northern District of Illinois against the same Defendants in this case as well as Bank of America, N.A. See Complaint, Sterling Fed. Bank, F.S.B. v. DLJ Mortg. Capital, Inc., et al., No. 09-CV-6904 (N.D. Ill. Nov. 3, 2009), ECF No. 1. Like Plaintiffs, Sterling F.S.B. purchased tranches of certificates collateralized by mortgages, and its claims are based on PSAs almost identical to the ones at issue in the present case. On September 29, 2011, Sterling F.S.B. filed a second amended complaint bringing claims for breach of contract against U.S. Bank as trustee and BNYM as trust administrator.

U.S. Bank asks the court to transfer the case to the Northern District of Illinois pursuant to the "first-filed rule." U.S. Bank contends that the Illinois action substantially overlaps with this case, and the cases should be consolidated to avoid inconsistent rulings and to preserve judicial, litigant, and certificateholder resources. Plaintiffs oppose the transfer and argue that the cases do not substantially overlap because they involve different plaintiffs and distinct trusts (with the exception of the trust represented by certificate class 2002-22 [the "2002-22 trust"], which is common to both actions).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006) (amended 2011). Under the first-filed rule, when actions filed in separate federal courts involve overlapping issues and parties, there is a strong presumption that the court initially having jurisdiction should hear the case. Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005). The first-filed rule considers: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. Groom v. Bank of Am., No. 8:08-CV-2567-T-27EAJ, 2010 WL 627564, at *9 (M.D. Fla. Feb. 23, 2010). The principal concerns behind the first-filed rule are to conserve judicial resources and to avoid incompatible rulings. Allstate Ins. Co. v. Clohessy, 9 F. Supp. 2d 1314, 1316 (M.D. Fla. 1998) (citation omitted). The party seeking to transfer the case carries the burden of establishing that the suggested forum is more appropriate. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) (per curiam).[4]

---

[4] Generally, the party objecting to jurisdiction in the first-filed forum carries the burden of showing compelling circumstances that justify a departure from the first-filed rule. Manuel, 430 F.3d at 1135. However, the movant, U.S. Bank, is not seeking to avoid the presumption of the first-filed rule. Instead, it is Plaintiffs who are seeking to avoid a transfer to the first-filed forum. Consequently, U.S. Bank carries the burden of showing that transfer to the first-filed forum is

Upon consideration of the above factors, the undersigned recommends transferring the case to the Northern District of Illinois. The Illinois action was filed approximately three months before this case. And the issues presented are substantially similar. Plaintiffs and Sterling F.S.B. assert the same four counts against U.S. Bank as trustee and BNYM ast trust administrator, and the allegations in the two complaints are nearly the same.[5] Compare (Dkt. 61), with Plaintiff's Second Amended Verified Certificateholder Derivative Complaint, Sterling, No. 09-CV-6904 (Sept. 29, 2011), ECF No. 105.

Although the cases were brought by different plaintiffs, both Plaintiffs and Sterling F.S.B. styled their claims as certificateholder derivative claims brought on behalf of the trusts. Plaintiffs argue that the cases involve different defendants because the trustee is a separate legal entity for each trust. However, the trusts at issue are similar, and both cases concern claims against U.S. Bank as a trustee and BNYM as a trust administrator. Neither complaint distinguishes the claims based on the particular trusts involved. Moreover, precise identity of the parties is not required under the first-filed rule. See Rudolph & Me, Inc. v. Ornament Cent., LLC., No. 8:11-CV-670–T–33EAJ, 2011 WL 3919711, at *2 (M.D. Fla. Sept. 7, 2011).

The 2002-22 trust is the only trust common to both actions. As to the other trusts, the risk of incompatible rulings between the two cases is mitigated by the fact that it is conceivable for Defendants to breach their duties with respect to one trust but fulfill their duties as to another.

---

appropriate. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Beta Constr. LLC, No. 8:10-CV-1541-T-26TBM, 2010 WL 3789042, at *3 & n.7 (M.D. Fla. Sept. 24, 2010).

[5] In addition to the parties, the biggest differences in the two complaints are that: (1) Plaintiffs' complaint contains more detailed damages allegations; and (2) Count I of Plaintiffs' complaint contains additional allegations relating to BNYM's duty to examine and provide monthly statements to rating agencies. Otherwise, the allegations are nearly identical.

However, because Plaintiffs' and Sterling F.S.B.'s claims are brought as derivative claims on behalf of the trusts, there remains the risk of incompatible rulings as to the 2002-22 trust. To the extent that the court deems a transfer appropriate, Plaintiffs ask that only their claims related to the 2002-22 trust be transferred. However, given the overlap between the two cases, such piecemeal litigation is not in the best interest of conserving judicial and litigant resources.

Plaintiffs claim that their investment in the 2002-22 trust is only twenty-four percent of the total investment at issue in this case, and the interests of justice do not weigh in favor of a transfer. However, such an investment is not a compelling circumstance that justifies departing from the first-filed rule where other factors weigh in favor of a transfer. See Manuel, 430 F.3d at 1135.

Although the case has been pending for almost two years, the party seeking the transfer, U.S. Bank, was not brought into the action until eighteen months after the case was filed. The amount of time that a case has been pending is one circumstance a court may consider in deciding a motion to transfer, but it is not a controlling factor. See, e.g., Poncy v. Johnson & Johnson, 414 F. Supp. 551, 557 (S.D. Fla. 1976); Exceptional Mktg. Grp., Inc. v. Jones, No. 1:10-CV-1312–TWT, 2011 WL 6294756, at *4 (N.D. Ga. Dec. 15, 2011). Plaintiffs do not argue that a transfer would result in prejudicial delays in resolving their claims or that any other factor related to the pendency of this action militates against a transfer.

Neither party has addressed the status of the Illinois action. However, a review of the docket available on PACER[6] indicates that the most recent complaints in both actions were filed less than two months apart, and U.S. Bank filed a motion to dismiss in the Illinois action that is similar to its

---

[6] U.S. Courts, PUB. ACCESS TO CT. ELECTRONIC RECS., http://www.pacer.gov (last visited Jan. 26, 2012).

7

motion to dismiss in this case.  Compare (Dkt. 77), with Defendant U.S. Bank's Motion to Dismiss and Memorandum of Law in Support of the Motion, Sterling, No. 09-CV-6904 (Nov. 14, 2011), ECF Nos. 119-20.  Furthermore, discovery in the Illinois action is in a similar posture to discovery in this case.  Compare (Dkt. 80, 89), with October 5, 2011 Minute Entry and November 30, 2011 Minute Entry, Sterling, No. 09-CV-6904, ECF Nos. 108, 128.  Because both cases stand in a similar procedural posture, the fact that the cases have been proceeding independently for almost two years does not weigh heavily against a transfer.

Because the undersigned recommends transferring the case pursuant to the first-filed rule, it is not necessary to consider whether a transfer is otherwise appropriate under 28 U.S.C. § 1404(a). In any event, the parties do not argue that the § 1404 factors favor one forum over the other.[7]

**Conclusion**

Pursuant to the first-filed rule, this case should be transferred to the United States District Court for the Northern District of Illinois where a similar action was first filed.  If the case is transferred, then ruling on the motion to dismiss should be deferred to permit the court with jurisdiction over the action to consider the motion to dismiss.[8]

Accordingly, and upon consideration, it is **RECOMMENDED** that Defendant U.S. Bank's

---

[7] The § 1404 factors include: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.  Manuel, 430 F.3d at 1135 n.1.

[8] The court recognizes that the motion to transfer may arguably be moot if the motion to dismiss were granted.  However, even if the motion to dismiss were granted, Plaintiffs would generally be entitled to leave to replead.  As such, the court finds it appropriate to recommend that the motion to transfer be granted without regard to the viability of the motion to dismiss.

request to transfer the case (Dkt. 77) be **GRANTED**.

**Date: January 26, 2012.**

ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge

9